IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD A. SHAW (R48130), ) | |
| ) | |
| Petitioner, ) | Case No. 17 C 3948 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| JUSTIN HAMMER, Warden, Illinois River ) | |
| Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is pro se petitioner Donald A. Shaw's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Shaw's habeas petition and further declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume that the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Sims v. Hyatte*, 914 F.3d 1078, 1095 (7th Cir. 2019). Where Shaw has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions on direct and post-conviction appeal.

Shaw and his co-defendant Lance Edwards were each charged with one count of first degree felony murder based on armed robbery and one count of first degree felony murder based on an aggravated battery with a firearm after the victim Shakir Beckley was shot and killed. Shaw was convicted of felony murder after his initial jury trial. On his direct appeal, however, the Illinois Appellate Court vacated his conviction and remanded for a new trial based on the trial court's

refusal to grant a continuance allowing defense counsel to call an eyewitness who would have corroborated Shaw's version of the events.

Prior to Shaw's second jury trial, the State filed a motion in limine to admit certain gang evidence to explain the motive for the shooting and the deliberate misidentification of the shooter. The trial court granted the motion. Trial evidence established that the fatal shooting of Beckley and the wounding of another victim, Vernard Davis, resulted from two gang-related incidents. More specifically, witnesses testified that Shaw, Vernard Davis, and Mycal Davis were members of the Apache Stones street gang. Co-defendant Edwards—a longtime friend of Shaw—was a member of the Vice Lords street gang. On April 10, 2002, Shaw brought Edwards over to Mycal's residence. A physical altercation ensued between Shaw and Vernard because Shaw brought a rival gang member (Edwards) over to Mycal's house. Eventually, Shaw left, leaving behind his jacket, a cell phone, and keys. Vernard subsequently phoned him to set up a meeting to retrieve the personal items.

On April 13, 2002, Shaw drove his car to the meeting accompanied by Edwards and two other Apache Stones members Tavares Hunt and Natari Gordon. Hunt was armed with an AK–47 assault rifle. Beckley, who was driving an SUV, had offered Vernard a ride to the meeting. As Beckley, Vernard, and Terrill Evins were walking toward the SUV, Shaw, Edwards, and Hunt approached them. Hunt put the AK–47 rifle to Evins' head and told the men to walk to the SUV. Edwards then punched Vernard in the face and Gordon pistol-whipped Vernard while Shaw kicked him. When Vernard attempted to run away, Hunt shot him in the shoulder and stomach. One of the shots struck Beckley in the neck, killing him.

The jury returned a general verdict finding Shaw guilty of first degree felony murder. The trial court sentenced him to 22 years in prison. On direct appeal, Shaw raised one issue, namely, that he was denied a fair trial when the trial court allowed the State to introduce prejudicial gang

2

evidence, including photographs of Hunt's tattoos. Shaw's arguments in support of this claim were based on state evidentiary rules and case law. *See People v. Smith*, 565 N.E.2d 900, 907, 152 Ill.Dec. 218, 225, 141 Ill.2d 40, 58 (Ill. 1990) (gang-related evidence "is only admissible where there is sufficient proof that such membership or activity is related to the crime charged."). On March 27, 2012, the Illinois Appellate Court rejected Shaw's argument and affirmed his conviction. Shaw filed a petition for rehearing arguing that the appellate court denied him full appellate review by failing to address his argument that the admission of Hunt's gang tattoos was unduly prejudicial and that the court's gang evidence assessment was erroneous. The Illinois Appellate Court denied the petition for rehearing without comment in August 2012. Shaw filed a petition for leave to appeal (PLA) in the Illinois Supreme Court arguing, in relevant part, that the Illinois Supreme Court should provide guidance to the lower courts about applying *People v. Smith*. The Illinois Supreme Court denied Shaw's PLA on November 28, 2012.

Shaw then filed a pro se post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*. Relevant to the present habeas petition, Shaw argued that his trial counsel was constitutionally ineffective for failing to file a pre-trial motion to dismiss the felony murder charge predicated on aggravated battery with a firearm under Illinois' independent felonious purpose rule. He also brought an ineffective assistance of appellate counsel claim based on counsel's failure to raise this argument about trial counsel's ineffectiveness. In December 2013, the trial court summarily denied Shaw's post-conviction petition.

On post-conviction appeal, Shaw, by counsel, brought a different ineffective assistance of trial counsel claim based on counsel's failure to request separate verdict forms for the two counts of felony murder and for failing to request a jury instruction on the independent felonious purpose rule. Shaw further argued that his appellate counsel on direct appeal was ineffective for failing to raise trial counsel's errors in this respect. On April 25, 2016, the Illinois Appellate Court upheld the

3

summary dismissal of Shaw's post-conviction petition concluding that Shaw had forfeited his arguments on appeal by not raising them in his post-conviction petition. The appellate court also rejected Shaw's arguments on the merits. Shaw filed a counseled PLA in the Illinois Supreme Court asserting that his trial counsel was constitutionally ineffective for failing to request separate verdict forms and a jury instruction on the independent felonious purpose rule. The Illinois Supreme Court denied Shaw leave to appeal in September 2016.

**Legal Standards**

"Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court cannot issue a writ of habeas corpus on a claim rejected on the merits in state court unless the petitioner surmounts high obstacles." *Janusiak v. Cooper,* 937 F.3d 880, 888 (7th Cir. 2019). Specifically, the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407.

"Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). "A federal court will not hear a state prisoner's habeas claim unless the prisoner has first exhausted his state remedies by presenting

4

the claim to the state courts for one full round of review." *Crutchfield v. Dennison*, 910 F.3d 968, 972 (7th Cir. 2018); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

**Habeas Petition**

Shaw filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). Construing his pro se petition liberally, *see Lund v. United States*, 913 F.3d 665, 669 (7th Cir. 2019), Shaw brings the following claims: (1) he was denied a fair trial when the trial court allowed the State to introduce prejudicial gang evidence; (2) trial counsel was constitutionally ineffective for failing to challenge the sufficiency of the evidence underlying his felony murder conviction and appellate counsel was ineffective for failing to raise this issue on appeal; (3) the Illinois Appellate Court misapprehended a fact on direct appeal when it concluded that the conflict at issue was gang-related; and (4) the Illinois Appellate Court denied him full appellate review on direct appeal by failing to address his contention about the admission of Hunt's gang tattoos.

**Discussion**

*Procedural Default*

Shaw has procedurally defaulted his habeas claim that he was denied a fair trial under the Fourteenth Amendment's due process clause. Although he mentioned that he was denied a fair trial to the Illinois appellate courts on direct appeal, his arguments were based on state evidentiary law, especially the Illinois Supreme Court's decision in *People v. Smith*, 565 N.E.2d 900, 907, 152 Ill.Dec. 218, 225, 141 Ill.2d 40, 58 (Ill. 1990). As such, Shaw did not fully and fairly present his constitutional claim through one full round of state court review. *Crutchfield*, 910 F.3d at 972; *see also Schmidt v. Foster*, 911 F.3d 469, 486 (7th Cir. 2018) (en banc). In other words, because Shaw made no reference to federal or constitutional law other than to say the he was denied a "fair trial," he did not fully present his federal claim to the state courts. That Shaw cited a case in his reply brief to the

5

Illinois Appellate Court mentioning a United States Supreme Court case does not change this analysis because this citation did not alert the state appellate court to the federal constitutional nature of his "fair trial" claim. *See Schmidt*, 911 F.3d at 486 (petitioner must "fairly present his federal claim to the state courts so that they have a 'fair opportunity' to consider and, if needed, correct the constitutional problem.").

Moreover, "[f]ederal habeas corpus relief is not available to correct perceived errors of state law." *Crockett v. Butler*, 807 F.3d 160, 168 (7th Cir. 2015). When conducting habeas review, federal courts are "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," therefore, federal habeas relief is not warranted under the circumstances because Shaw based his gang evidence arguments on state evidentiary law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Therefore, Shaw's fair trial claim is not cognizable on collateral review.

Shaw has also procedurally defaulted his ineffective assistance of trial and appellate counsel claims because he did not raise them through one complete round of state court review. *Boerckel*, 526 U.S. at 845. To clarify, his ineffective assistance claims in his habeas petition are based on counsel's failure to challenge the sufficiency of the evidence underlying his felony murder conviction. In his Illinois post-conviction petition, however, he based his ineffective assistance claim on counsel's failure to file a pre-trial motion to dismiss the felony murder charge predicated on aggravated battery with a firearm. On appeal and in his PLA, Shaw argued a different ineffective assistance claim based on counsel's failure to request separate verdict forms for the two counts of felony murder and for failing to request a jury instruction on the independent felonious purpose rule. Therefore, Shaw did not bring the same ineffective assistance of counsel claims through one full round of review in the Illinois courts. *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

6

In his reply brief, Shaw argues that his counsel's ineffective assistance of counsel excuses his procedural default. Although "[m]eritorious claims of ineffective assistance can excuse a procedural default," the ineffective assistance of counsel claims "must themselves be preserved." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). As discussed, Shaw procedurally defaulted his ineffective assistance of counsel claims so they are not "preserved." And, "[b]ecause there is no Sixth Amendment right to counsel on collateral review, attorney error in postconviction proceedings is not cause to excuse a procedural default." *Crutchfield*, 910 F.3d at 971, 973 ("Illinois does not impose the kind of restrictive procedural rules on *Strickland* claims to warrant application of the *Martinez– Trevino* exception."); *see also* 28 U.S.C. § 2254(i). Thus, Shaw has not established an exception to his procedural default.

*Non-Cognizable Claims*

Shaw also argues that the Illinois Appellate Court misapprehended a fact on direct appeal when it concluded that the conflict at issue was gang-related. In particular, he argues that the appellate court erred when it concluded that Shaw, Edwards, and Vernard Davis' gang associations "explained the sequence of events leading up to the shooting," and that this evidence was properly admitted to "explain the motive behind the crime." *People v. Shaw*, 2012 IL App (1st) 101548-U, ¶ 21, 2012 WL 6950254, at *4 (1st Dist. 2012). Under § 2254(e)(1), the appellate court's factual findings are presumed correct unless rebutted by clear and convincing evidence, which Shaw has failed to provide. In addition, the appellate court came to this factual conclusion in the context of applying Illinois' evidentiary rules. *See People v. Smith*, 114 Ill.2d at 56 ("any evidence which tends to show that an accused had a motive for killing the deceased is relevant because it renders more probable that the accused did kill the deceased."). Therefore, Shaw's argument that the appellate court misapprehended a fact is not cognizable on habeas review.

To explain, the federal habeas statute "permits persons in state custody to apply for habeas relief on the ground that their custody violates the Constitution or laws of the United States." *Conroy v. Thompson*, 929 F.3d 818, 819 (7th Cir. 2019); *see also* 28 U.S.C. § 2254(a). Put differently, to obtain federal habeas relief under § 2254(d)(1), "the state court's decision must be an unreasonable application of federal law—not a state court's resolution of a state law issue." *Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019). Because Shaw's claim rests on the interpretation of state evidentiary law (despite his argument in his reply brief that it falls under the First Amendment's protections), the Court cannot review his claim under § 2254(d)(1). *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Likewise, Shaw's remaining claim that the Illinois Appellate Court denied him full appellate review by failing to address his contention about the admission of Hunt's gang tattoos is not properly before the Court on habeas review because "it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010). In sum, Shaw's challenges to the Illinois courts' application of its own evidentiary rules are not cognizable on habeas review.

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336; 28 U.S.C. § 2253(c)(2). Under this standard, Shaw must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted).

Here, Shaw has not established reasonable jurists would debate that his claims challenging state evidentiary law were not cognizable on habeas review. Also, a reasonable jurist would not debate that the Court erred in its procedural default determinations. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). The Court therefore declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's petition for a writ of habeas corpus [1] and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d)(1). Civil case terminated.

SO ORDERED.

							_____
							Sharon Johnson Coleman
							United States District Judge

DATED: 1/16/2020